2025 Tex. Bus. 30



The Business Court of Texas
Eleventh Division

| | | |
|---|---|---|
| OWL ASSETCO 1, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Cause No. 25–BC11B–0027 |
| | § | |
| EOG RESOURCES, INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION

[¶ 1] On July 25, 2025, the Court signed an order granting the Motion to Remand ("Motion") filed by Plaintiff OWL AssetCo1, LLC, ("OWL") on June 9, 2025, and submitted for consideration without oral argument on July 17, 2025. In the order, the Court stated its written opinion explaining its ruling in further detail would be forthcoming. This is the Court's opinion.

### I. BACKGROUND

[¶ 2] OWL and Defendant EOG Resources, Inc. ("EOG") are businesses operating in the oil and gas industry. EOG's Resp. to Mot. ("Response") ¶ 4. In this action, their business relationship is governed by an agreement, signed on December 31, 2019,

concerning the delivery and disposal of produced water and the parties' respective responsibilities. Pet. ¶¶ 10–14.

### A. OWL's Petition

[¶ 3] After incurring "millions of dollars" and "significant costs" remediating three separate spills of produced water over a three-year span (the Fruit State, Cigarillo, and Bon Bon spills), OWL sued EOG for breach of contract in the 152nd Judicial District Court of Harris County, Texas, on April 9, 2025. *Id*. ¶¶ 15–20. OWL pleads that EOG breached the provisions of an agreement obligating EOG to deliver produced water meeting certain specifications and to reimburse and indemnify OWL for injury caused by EOG's failure to deliver produced water meeting these specifications. *Id*. ¶¶ 23–27. OWL seeks an award of compensatory damages exceeding the district court's jurisdictional minimum. *Id*. ¶¶ 3, 27, 29. That award is, at the very least, monetary relief of more than $1 million. *Id*. ¶ 7.

### B. EOG's Answer and Counterclaims

[¶ 4] On May 12, 2025, EOG answered and countersued for breach of contract and declaratory judgment, asserting that the district court has jurisdiction over this action because the amount in controversy exceeds $10 million.[1] Counterpetition ¶ 7. The amount in controversy, according to EOG, encompasses the indeterminate millions of compensatory damages pleaded by OWL and the specific monetary relief sought by EOG in its breach-of-contract claim. *Id*. ¶¶ 8–9. For its breach-of-contract claim, EOG pleads that because OWL breached the contract by failing to take dedicated volumes of produced water,

---

[1] EOG has specially excepted to the relief sought by OWL, asking that OWL be required to specify the maximum amount claimed. Answer and Countercls. ("Counterpetition") ¶ 4.

EOG is owed liquidated damages worth approximately $929,192.00 in credits. *Id*. ¶¶ 32–34. Relatedly, EOG further alleges that "[o]ver the life of the [a]greement, if [OWL] does not cure its breach, EOG is owed approximately $6,453,000 in credits…." *Id*. ¶ 34. For its declaratory judgment claim, EOG does not seek a specific monetary amount of damages but rather a declaration that Pilot is solely responsible for the spills and their remediation costs and that EOG is neither responsible nor liable. *Id*. ¶¶ 26–28.

### C. EOG's Notice of Removal

[¶ 5] Later that same day, EOG removed the action to the Court without OWL's agreement. Notice of Removal ("Notice") ¶ 9. EOG asserts that the Court has jurisdiction pursuant to two statutory grounds: Sections 25A.004(d)(1) and (e) of the Texas Government Code. *Id*. ¶¶ 1, 4–8. The Court has jurisdiction under subsection (d)(1) assertedly because the action arises out of a qualified transaction. *Id*. ¶ 4. Relevantly, EOG contends that the amount in controversy exceeds $10 million, citing in its Notice the same pleaded damages cited in its Counterpetition in support of the district court's jurisdiction: OWL's millions in compensatory damages and EOG's millions in credits owed. *Id*. ¶¶ 5–6. The Court has jurisdiction under subsection (e) purportedly because EOG seeks a declaratory judgment concerning its rights under the parties' agreement. *Id*. ¶ 8.

### D. OWL's Motion

[¶ 6] OWL filed its Motion on June 9, 2025. OWL argues that contrary to EOG's assertions, the Court lacks jurisdiction under subsections (d)(1) and (e). Motion, at 3, 6. OWL contends that the Court lacks jurisdiction under subsection (d)(1) because the amount in controversy is less than $10 million for two reasons. *Id*., at 3, 6–11. First, OWL maintains

that it seeks damages of approximately $8.22 million, the amount spent on remediating the three spills. *Id.*, at 3, 6–8. Second, OWL insists that the amount in controversy is determined solely by its claims and, thus, that EOG's counterclaims cannot be considered. *Id.*, at 3, 8–11. OWL further contends that the Court lacks jurisdiction under subsection (e) because there is no underlying jurisdiction under subsection (d)(1), a prerequisite for exercising jurisdiction under subsection (e). *Id.*, at 3, 11–12.

### E. The Parties' Briefing

[¶ 7] The Court ordered the parties to discuss the effect, if any, of House Bill 40 on the Court's jurisdiction over this action in any additional briefing filed in support of their respective positions. Order [6/16/2025], at 2. For an action arising out of a qualified transaction under subsection (d)(1), H.B. 40 lowers the relevant amounts, including the amount in controversy, from $10 million to $5 million. Act of June 1, 2025, 89th Leg., R.S., ch. 912, §§ 43, 45. The change in law becomes effective on September 1, 2025, and, except for circumstances not existing here, applies to an action commenced on or after September 1, 2024. *Id.* §§ 56, 72, 73.

[¶ 8] In its briefing opposing remand, EOG re-urges the argument that the amount in controversy presently exceeds $10 million when the value of OWL's claims and EOG's counterclaims, including its request for declaratory relief, are aggregated. Resp. ¶¶ 24–38; Sur-reply ¶¶ 2–6. But EOG also raises the alternate argument that the Court, instead of needlessly remanding this action, should stay this action until H.B. 40 takes effect and then dismiss OWL's Motion as moot. Resp. ¶¶ 39–43; Sur-reply ¶¶ 7–16.

[¶ 9] In its briefing supporting remand, OWL re-urges the argument that the amount in controversy is presently less than $10 million because the parties' claims, including EOG's unripe claim for a potential $6.5 million in future damages, cannot be aggregated and, even if aggregated, are insufficient to meet the current jurisdictional threshold. Reply, at 4–9; Final Reply, at 2–3. But OWL also raises the alternate argument that, because H.B. 40 would not confer jurisdiction until September 1, 2025, the Court lacks jurisdiction now under existing law and has no choice but to remand. Reply, at 9–12; Final Reply, at 3–5.

## II. JURISDICTION

[¶ 10] EOG asserts that the Court has jurisdiction over this action under Sections 25A.004(d)(1) and (e). Notice ¶¶ 1, 4–8. *See* TEX. GOV'T CODE ANN. §§ 25A.004(d)(1) (establishing jurisdiction based on a qualified transaction), (e) (establishing jurisdiction based on injunctive or declaratory relief); *see also id.* § 25A.001(14) (defining qualified transaction).[2] EOG is incorrect.

### A. Section 25A.004(d)(1)

[¶ 11] Section 25A.004(d)(1) provides that, in an action arising out of a qualified transaction, the Court has jurisdiction if the amount in controversy exceeds $10 million, excluding interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs. TEX. GOV'T CODE ANN. § 25A.004(d)(1). Because OWL has not contested

---

[2] Whether the Court has jurisdiction over this action as asserted by EOG is ordinarily a question of law for the Court to decide. *C Ten 31 LLC ex rel. SummerMoon Holdings LLC v. Tarbox*, 2025 Tex. Bus. 1, ¶ 9, 708 S.W.3d 223, 230 (3rd Div.). As the party seeking removal, EOG bears the burden of establishing the Court's jurisdiction over this action. *See* TEX. GOV'T CODE ANN. §§ 25A.006(d) (requiring existence of jurisdiction to effectuate removal), (f) (requiring party seeking removal to establish jurisdiction over action); *see also* TEX. R. CIV. P. 355(b)(2)(A) (requiring party seeking removal to establish authority to hear action).

removal on the basis that there is no qualified transaction, the focus is on whether the amount in controversy exceeds $10 million.

[¶ 12] In the jurisdictional context, the amount in controversy in an action is the sum of money or the value of the thing originally sued for. *Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000) (quotation marks omitted); *C Ten*, 2025 Tex. Bus. 1, at ¶ 32, 708 S.W.3d at 237 (internal citation and quotation marks omitted). The amount in controversy is frequently determined by the damages sought. *Tune*, 23 S.W.3d at 361. For purposes of determining whether jurisdiction exists under subsection (d)(1), the amount in controversy is the amount recoverable under the pleadings when the action is filed. *Atlas IDF, LP v. NexPoint Real Est. Partners, LLC*, 2025 Tex. Bus. 16, ¶¶ 33, 40–51, 715 S.W.3d 390, 395–98 (1st Div.).

### 1. The amount in controversy does not exceed $10 million

[¶ 13] The amount in controversy does not exceed $10 million. The evidence before the Court at this time shows that the amount in controversy is, at the minimum, $8,215,518.51, the amount in damages OWL seeks from EOG for remediating the three spills as computed in the affidavit executed by a corporate representative of OWL's parent company and attached as Exhibit 1 to OWL's Motion[3], and, at the maximum, $9,144,710.51, if the $929,192.00 in liquidated damages sought by EOG in its breach-of-

---

[3] The affiant is David Grounds, who identifies himself as the Vice President of Regulatory Compliance for Pilot Water Solutions, LLC ("Pilot"). Mtn. Ex. 1 ¶¶ 1–2. He avers that Pilot is OWL's parent company through an intermediate entity and that he was involved in OWL's efforts to remediate the Fruit State, Cigarillo, and Bon Bon spills. *Id*. ¶¶ 2–3. He further avers that the costs incurred to remediate these three spills are $2,992,093.75, $3,205,200.00, and $2,018,224.76, respectively. *Id*. ¶¶ 4–7.

contract claim is also considered. Even if the Court were to consider EOG's claim for $929,192.00 alongside OWL's claim for $8,215,518.51 in determining the amount in controversy, the aggregated claims would be insufficient to meet the current $10-million-plus jurisdictional threshold.

[¶ 14] EOG raises several arguments in support of its position that the amount in controversy exceeds $10 million, but none are persuasive.

[¶ 15] EOG argues that the amount in controversy has been met because pleadings must be construed liberally in favor of jurisdiction as conferred here by subsection (d)(1). Resp. ¶¶ 16–18, 21. EOG points out that its pleadings, the Counterpetition and Notice, allege that the amount in controversy exceeds $10 million and that OWL's petition, while silent on the amount in controversy, does not affirmatively establish an amount in controversy outside the Court's jurisdiction. *Id*. ¶¶ 16, 21, 31. In apparent support of the point that OWL's petition does not negate jurisdiction, EOG remarks several times in its jurisdictional briefing that OWL's petition does not contain the damages averred in the affidavit. Resp. ¶¶ 8–10, 15, 21; Sur-reply ¶ 14. EOG is correct that OWL's petition identifies indeterminate damages in excess of $1 million rather a specific damages amount.[4] Pet. ¶¶ 3, 7, 27, 29.

---

[4] The allegation that actual damages exceed $1 million pursuant to Rule 47's requirement to specify the range of damages does not establish that the amount in controversy exceeds $10 million. *See C Ten*, 2025 Tex. Bus. 1, at ¶¶ 35, 53, n.68, n.108, 708 S.W.3d at 238, 244, n.68, n.108; TEX. R. CIV. P. 47(c). Equally, the allegation that actual damages exceed $1 million does not establish that the amount in controversy is outside the Court's jurisdictional limits either because the amount is incalculable based on the information in the petition.

[¶ 16] But the absence from OWL's petition of a specific damages amount affirmatively demonstrating an amount in controversy outside the Court's jurisdiction does not mean that jurisdiction exists despite EOG's allegation that the amount in controversy exceeds $10 million. This is because, as permitted by the burden-shifting standard governing amount-in-controversy disputes discussed by the Court in *C Ten*, OWL has provided evidence, *i.e.*, the affidavit attached to the Motion, establishing that the amount in controversy is outside the Court's jurisdictional threshold.[5] *See C Ten*, 2025 Tex. Bus. 1, at ¶ 51, 708 S.W.3d at 243 (internal citations omitted). Under this standard, the burden shifted to EOG to present controverting evidence raising a fact issue on the amount in controversy to avoid remand. EOG has not presented such evidence. *See id.* There are no affidavits or exhibits attached to the response to the Motion or to the sur-reply in support of removal, and the exhibits attached to EOG's Notice do not controvert the damages

---

[5] The *C Ten* burden-shifting standard encompasses the following procedure:

> First, when the plaintiff's petition alleges the amount in controversy, that pleading controls unless (a) a party presents evidence that the amount pleaded is falsely asserted to wrongly obtain or avoid jurisdiction, or (b) a different amount in controversy is readily established, such as by statutorily set fees.

> Second, when the plaintiff's pleadings are silent as to whether the amount in controversy falls within this Court's jurisdiction, but a removing party's notice of removal properly pleads that the amount is within the Court's jurisdiction, those pleadings will be given the same deference in the remand analysis: they will control absent the circumstances described in (a) or (b) above.

> Third, in either case, if a party presents evidence demonstrating that the amount in controversy is outside the Court's jurisdiction, the Court will remand the case unless another party presents controverting evidence that, at a minimum, raises a fact issue. And if there is a fact issue, the party asserting jurisdiction will bear the burden of proof on the issue at trial.

*C Ten*, 2025 Tex. Bus. 1, at ¶¶ 49–51, 708 S.W.3d at 243 (internal citations omitted).

sought by OWL as calculated in the affidavit. These exhibits consist of a docket sheet; OWL's Petition, to which the parties' agreement is attached; an affidavit of service; and EOG's Counterpetition. Notice Exs. A, C–1, C–2, C–3.

[¶ 17] EOG also argues that the amount in controversy requirement can be determined by the amount at stake in the action as a whole and, thus, includes the damages claimed and relief demanded in its counterclaims in the aggregate. Resp. ¶¶ 24–27, 30–38; Sur-reply ¶¶ 2–6. EOG points out that subsection (d)(1) grants jurisdiction for an "action" and that, in *C Ten*, this Court, recognizing that the statutory term refers to a lawsuit, held that subsection (b)'s $5 million amount-in-controversy requirement applies at the "action" level and is satisfied when the claims, collectively, meet the jurisdictional threshold. Resp. ¶¶ 24, 26, 28–29; Sur-reply ¶¶ 2–6. *See C Ten*, 2025 Tex. Bus. 1, at ¶¶ 25–30, 708 S.W.3d at 234–36 (internal citations omitted). But *C Ten* does not hold that an action necessarily includes aggregated counterclaims for the purpose of calculating the amount in controversy, and EOG has not cited any Texas authority in support of its position, relying instead on federal authority. Resp. ¶ 30. *See, e.g.*, *Liberty Mut. Ins. Co v. Horton*, 275 F.2d 148, 152 (5th Cir. 1960), *aff'd*, 367 U.S. 348, 81 S. Ct. 1570, 6 L.Ed.2d 890 (1961) (holding that, in an original action, not a removal action, involving a Texas workers' compensation case, the amount in controversy may be satisfied by aggregating plaintiff's claim and defendant's counterclaim where neither claim alone satisfies the jurisdictional amount but the combination of the two does); *but see United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 401 (Tex. 2007) (indicating that "the 'matter in controversy' includes all of the damages the plaintiff seeks to recover at the time suit is filed.").

[¶ 18] As intimated previously, the Court does not need to determine whether EOG's counterclaims should be aggregated with OWL's claim for purposes of satisfying the amount in controversy. This is because the only counterclaim that could theoretically be considered is the ripe breach-of-contract claim seeking liquidated damages worth approximately $929,192.00, and this counterclaim would not push the amount in controversy over the jurisdictional line.

[¶ 19] There is no other ripe counterclaim that could theoretically be considered. EOG does not have a present claim for future damages in the amount of $6,453,000.00 due to OWL's anticipatory breach. Instead, EOG has a potential, contingent claim of $6,453,000.00 if OWL does not perform in the future. Such a claim is unripe, and unripe claims, which do not confer jurisdiction, should not be counted in calculating the amount-in-controversy requirement. *See, e.g.*, *Republic Vanguard Ins. Co. v. Russell*, 2021 WL 794464, at *3–4 and n.2 (N.D. Ala. Mar. 2, 2021) (explaining that because unripe claims deprive courts of jurisdiction, courts may not consider damages from unripe claims in calculating the amount in controversy); *Veloz v. Allstate Fire & Cas. Ins. Co.*, 2022 WL 903259, at *3 (W.D. Tex. Mar. 28, 2022) (same). And EOG's counterclaim for a declaratory judgment is not part of the analysis for determining the amount in controversy under subsection (d)(1) notwithstanding EOG's assertion that it is relevant to the analysis because it directly relates to OWL's "claim" for indemnity subsumed under OWL's breach-of-contract claim. Resp. ¶¶ 12, 27, 34–38. In support of its assertion, EOG maintains that the relief sought by OWL and disputed by EOG is actually the value of the indemnity obligation in the agreement, which, according to EOG, is more than $10 million based on

the provisions in the agreement requiring the parties to obtain various insurance policies with limits that in the aggregate exceed this amount. *Id.* But OWL's pleaded cause of action is a breach-of-contract claim seeking $8,215,518.51 as established by jurisdictional evidence, and EOG's recharacterization of OWL's claim in an effort to meet subsection (d)(1)'s $10-million-dollar-plus jurisdictional threshold does not change this fact. Moreover, EOG brings its counterclaim for declaratory judgment pursuant to subsection (e), not subsection (d)(1), as EOG itself acknowledges in its Notice: "As EOG seeks a declaratory judgment concerning its rights under the Agreement, jurisdiction exists here under TEX. GOV'T CODE ANN. § 25A.004(e)." Notice ¶ 8. Consequently, EOG bears the burden to establish the Court's jurisdiction over its declaratory judgment under subsection (e), not subsection (d)(1). As explained below, EOG has not borne its burden.

### 2. H.B. 40 does not affect the Court's current jurisdiction over this action

[¶ 20] As mentioned previously, the Court ordered the parties to discuss the effect, if any, of H.B. 40 on the Court's jurisdiction over this action. Order [6/16/2025], at 2. The parties complied, providing reasoned analysis in support of their respective positions. EOG argues that, in light of H.B. 40, OWL's challenge to the amount in controversy will be moot on September 1, 2025, and that, therefore, the Court should defer its ruling until after then, to promote judicial efficiency and avoid a second removal. Resp. ¶¶ 39–43; Sur-reply ¶¶ 7–16. OWL contends that the Court should not be swayed by EOG's argument to defer for economic and efficiency reasons because H.B. 40 does not confer jurisdiction now and the propriety of a second removal is a different legal issue not ripe for consideration. Reply, at 9–12; Final Reply, at 3–5. After considering the parties' arguments, the Court concludes

that H.B. 40 does not affect the disposition of this motion. The Court *presently* lacks jurisdiction over this action under subsection (d)(1), and H.B. 40 does not change this current reality. Consequently, because there is no other statutory basis for the Court to exercise jurisdiction over this action, as explained below, the Court is required to remand this case to the district court as soon as practicable. *See* TEX. GOV'T CODE ANN. § 25A.006(d) (requiring the business court to remand in the absence of jurisdiction); TEX. R. CIV. P. 355(f)(1) (same); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004) (instructing that determining jurisdiction should be made "as soon as practicable"). In the absence of jurisdiction, the Court must remand because it has no power to do anything else, like defer its ruling or stay the proceeding as urged by EOG. *See Kelley v. Homminga*, 706 S.W.3d 829, 833 (Tex. 2025) (holding that, when a court lacks jurisdiction, the court lacks power to do anything but dismiss).

### B. Section 25A.004(e)

[¶ 21] EOG contends that the Court has jurisdiction over this action because EOG seeks a declaratory judgment. Notice ¶¶ 1, 8. Section 25A.004(e) confers jurisdiction "in an action seeking injunctive relief or a declaratory judgment under Chapter 37, Civil Practice and Remedies Code, involving a dispute based on a claim within the court's jurisdiction under subsection (b), (c), or (d)." TEX. GOV'T CODE ANN. § 25A.004(e). But EOG has not established that the Court has jurisdiction over this action pursuant to subsection (e). EOG's briefing is devoid of any discussion relating to subsection (e). More fundamentally, however, the Court does not have jurisdiction pursuant to subsection (e) because there is no claim within the Court's jurisdiction under subsection (d)(1), a

prerequisite for establishing jurisdiction under subsection (e). *See C Ten 31 LLC,* 2025 Tex. Bus. 1, at ¶¶ 18–24, 708 S.W.3d at 232–34 (concluding that the Court does not have jurisdiction pursuant to subsection (e) unless the party satisfies subsection (b), (c), or (d)'s jurisdictional prerequisites).

### III. CONCLUSION

[¶ 22] For these reasons, the Court entered its July 25, 2025 order granting OWL's Motion.

JERRY D. BULLARD
Judge of the Texas Business Court,
sitting by assignment

SIGNED ON: August 11, 2025