2026 Tex. Bus. 27



THE BUSINESS COURT OF TEXAS
EIGHTH DIVISION

| | | |
|---|---|---|
| DRINKPAK, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Cause No. 26-BC08A-0007 |
| | § | |
| PRIII/CROW BUILDING C, LP and | § | |
| TRAMMELL CROW COMPANY, LLC, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION

¶ 1    On March 27, 2026, Plaintiff DrinkPAK, LLC ("DrinkPAK") filed its Motion to Remand and Brief in Support ("Remand Motion"). Defendants PR III/Crow Building C, LP ("PR III") and Trammel Crow Company, LLC ("TCC") (together with PR III, "Defendants") filed their Response in Opposition to Plaintiff's Motion to Remand on April 9, 2026 ("Response"). Defendants also filed a post-submission Brief in Support of Defendants' Rule 91a Motion to Dismiss and Brief in Opposition to Plaintiff's Motion to Remand on April 16, 2026. The Court issued its Order Granting Plaintiff's Motion to Remand ("TBC Remand Order") on April 17, 2026, and stated an opinion further explaining its ruling would be forthcoming. This is the Court's opinion.

## I. BACKGROUND

¶ 2    DrinkPAK is a canned-beverage manufacturer. Plaintiff's First Amended Petition ("First Am. Pet.") at 2. PR III owns warehouse sites in the Dallas–Fort Worth area, and TCC is a commercial real estate development broker/entity with various industrial development projects in the DFW metroplex. *Id.* at 3. In July 2023, DrinkPAK entered into a multi-million-dollar contract (the "Lease") with PR III to lease 1.3 million square feet of rental space ("Leased Building") and build-to-suit a beverage manufacturing site ("35 Eagle"). *Id.* at 3-4. DrinkPAK claims TCC, as PR III's broker, communicated with DrinkPAK about Eagle 35's construction development but never informed DrinkPAK of Eagle 35's "slab failure, or threats of [foundation] compaction and sinking." *Id.* at 6. As early as October 2023, DrinkPAK allegedly realized 35 Eagle was plagued by extensive foundation failures. *Id.* at 5.

¶ 3    Beginning in January 2024, DrinkPAK and PR III exchanged communications concerning the Leased Building and 35 Eagle. First Am. Pet., Ex. A, at 12. By March 2024, the parties each sent demand letters seeking millions of dollars in damages. *Id.* at 13. In November 2025, DrinkPAK sued PR III and TCC in Denton County, Texas' 431st Judicial District alleging multiple fraud and negligence-based claims, and breach of an implied warranty of suitability. First Am. Pet. at 11-22. DrinkPAK served PR III on December 12, 2025. Remand Mot. at 3. PR III invoked diversity jurisdiction and removed the lawsuit to the United States District Court for the Eastern District of Texas— Sherman Division. *Id.* at 3 n.2. DrinkPAK served TCC on December 15, 2025. *Id.* at 3. DrinkPAK and the Defendants filed a Joint Stipulation and Requested the federal court

remand the action back to Denton County on January 15, 2026. *Id*. at 4. Accordingly, the lawsuit was remanded back to Denton County. *See id*.

¶ 4     After the federal remand, Defendants filed their Answer and Counterclaim on March 3, 2026, and their Notice of Removal to the Business Court of Texas ("TBC Removal Notice") on March 10, 2026. Resp. at 4. DrinkPAK filed its Remand Motion on March 27, 2026, asking the Business Court to remand the matter back to Denton County. Remand Mot. at 9. The Court issued the TBC Remand Order on April 17, 2026.

¶ 5     The crux of DrinkPAK's Remand Motion is that Defendants' TBC Removal Notice is statutorily untimely. Remand Mot. at 1, 5-6, 9 (citing TEX. GOV. CODE. § 25A.006(f)(1), TEX. R. CIV. P. § 355(c)(2)(A). In response, Defendants maintain (1) DrinkPAK's Original Petition "did not provide an objective[] . . . amount in controversy" to satisfy the Business Court's jurisdictional threshold and (2) Defendants ascertained quantified damages only after PR III filed its counterclaim. Resp. at 2.

## II.     LEGAL STANDARD

¶ 6     The Business Court has civil jurisdiction concurrent with district courts in qualified transactions where the amount in controversy exceeds $5 million. TEX. GOV. CODE § 25A.004(d). The Texas Rules of Civil Procedure and the Texas Government Code govern removal procedures using a parallel and complementary framework. *See* TEX. R. CIV. P. 355(c)(2)(A); TEX. GOV. CODE § 25A.006(f). To start, an action within the Business Court's jurisdiction may be filed in the Business Court. TEX. GOV. CODE § 25A.006(a). Any party to a district court action within the Business Court's jurisdiction may remove the action to the Business Court. TEX. R. CIV. P. 355(c)(2)(A); TEX. GOV. CODE § 25A.006(f).

Further, the action may be removed at any time upon consent of all parties. TEX. R. CIV. P. 355(c)(1); TEX. GOV. CODE § 25A.006(f). However, if removal is contested, the removing party has a 30-day window to file its removal notice. TEX. R. CIV. P. 355(c)(2)(A)-(B); TEX. GOV. CODE § 25A.006(1)(2)(A)-(B). If contested, the removal notice must be filed within 30 days from the later of the following:

> (A) [T]he date the party requesting removal of the action was served with process in accordance with rules adopted by the supreme court; or
>
> (B) [T]he date the party requesting removal of the action discovered, or reasonably should have discovered, facts establishing the business court's jurisdiction over the action.

TEX. GOV. CODE § 25A.006(f)(1)(A)-(B). The party seeking removal bears the burden of establishing jurisdiction. *See* TEX. GOV'T CODE §§ 25A.006(d), (f); *Black Mountain SWD, LP v. NGL Water Sols. Permian, LLC*, 2025 Tex. Bus. 24, ¶ 10, 718 S.W.3d 281, 286 (8th Div. 2025).

### III.    ANALYSIS

#### A. Defendants' Removal Notice is Untimely

¶ 7    Defendants failed to satisfy either statutory prerequisite for timely removal. *See* TEX. GOV. CODE § 25A.006(f)(1)(A)-(B). Indeed, their TBC Removal Notice invoked the Business Court's jurisdiction. *See* TEX. GOV. CODE § 25A.004(b). But Defendants faced a statutory roadblock when DrinkPAK opposed the removal. As stated above, because DrinkPAK did not consent, Defendants needed to file their TBC Removal Notice no later than 30 days after the later of (1) the date they were served with process or (2) the date they discovered facts establishing the Business Court's jurisdiction. *See* TEX. GOV. CODE §

25A.006(f)(1)(A)-(B). Defendants did neither. First, Defendants did not file their TBC Removal Notice within 30 days of service. *See id.* at § 25A.006(f)(1)(A). DrinkPAK served PR III on December 12, 2025, and served TCC three days later, on December 15, 2025. Thirty days after the latest service date (December 15, 2025) is January 14, 2026. Defendants filed their TBC Removal Notice on March 10, 2026, well beyond their statutory deadline.

¶ 8     Next, Defendants did not file their TBC Removal Notice within 30 days after discovering facts establishing the Business Court's jurisdiction. *See* TEX. GOV. CODE § 25A.006(f)(1)(B). Defendants argue DrinkPak's Original Petition did not provide an objectively ascertainable basis to determine whether the amount in controversy exceeded $5 million because the pleading only alleged damages "over $1 million" in accordance with Texas Rule of Civil Procedure 47. Resp. at 2. Defendants' construction is far too narrow.

¶ 9     It is true that a Rule 47 allegation seeking relief "over "$1 million" does not, standing alone, conclusively establish the Business Court's jurisdiction. *See, e.g., OWL AssetCo 1, LLC v. EOG Res., Inc.*, 2025 Tex. Bus. 30, ¶ 14, n.4, 2025 WL 2306527, at *3 (8th Div. 2025) (holding allegations exceeding $1 million do not automatically establish the jurisdictional amount in controversy). But the jurisdictional inquiry does not end with the generic Rule 47 pleading requirement. The relevant question under Section 25A.006(f)(1)(B) is when Defendants discovered, or reasonably should have discovered, facts establishing the Business Court's jurisdiction. In making that determination, the Business Court may consider the petition as a whole, the nature of the claims asserted, the underlying transaction, and other evidence bearing on the amount in controversy. *C Ten 31*

*LLC ex rel. SummerMoon Holdings LLC v. Tarbox*, 2025 Tex. Bus. 1, ¶¶ 35, 53, n. 68, n. 108, 708 S.W.3d 223, 238, 244 (3rd Div.). For example, the Court may examine the monetary terms of the underlying transaction itself in determining whether the amount in controversy plausibly exceeds the jurisdictional threshold. *See Yaun v. Battle & Sands Energy Corp.*, 2026 Tex. Bus. 9, ¶ 11, 2026 WL 598409, at *3 (11th Div. 2026) (examining lease terms to determine the "possibility" and "plausibility" that landlord's damage claim exceeds $5 million).

¶ 10    Here, the petition, the Lease, and the parties' pre-suit correspondence left no reasonable doubt that the amount in controversy exceeded $5 million well before Defendants filed their TBC Removal Notice. Therefore, Defendants discovered, or should have discovered, the jurisdictional facts no later than their respective service dates.

1. The Lease's terms established jurisdictional facts.

¶ 11    The Lease's express terms suggest Defendants discovered the amount in controversy triggered the Business Court's jurisdiction, at the latest, on TCC's service date. DrinkPAK and PR III entered into the Lease on July 21, 2023. Remand Mot. at 57-58. Under the Lease, DrinkPAK contracted to build a 1,250,743 square foot beverage manufacturing facility and pay PR III roughly $700,000-$1,054,000 each month for 12 years. *Id.* at 12, 16-17. By its terms, DrinkPAK contracted to pay PR III more than $100 million over the 12-year lease period. *Id.* at 57-58. PR III is a party to the Lease and made aware of its terms on the contracting date (July 21, 2023). *See id.* at 57-58. As PR III's broker, TCC was aware, or should have been aware, of the Lease's terms when PR III contracted with DrinkPAK.

¶ 12   It is wholly unreasonable that Defendants—parties to a contract cumulatively netting them over $100 million—now claim they were unaware the amount in controversy would exceed $5 million.  As a commercial landlord and its broker, PR III and TCC knew, or should have known, by the Lease's express monetary amounts that any litigation concerning the Leased Building and/or 35 Eagle would concern several millions of dollars.  For jurisdictional purposes, PR III and TCC were made aware of DrinkPAK's lawsuit when DrinkPAK served them on December 12 and 15, 2025, respectively.  *See Yaun*, 2026 Tex. Bus. 9 at ¶ 11 (holding the "possibility—plausibility, even" that the amount could exceed the minimum was enough to confer jurisdiction).  But, as prudent players in the Dallas–Fort Worth commercial real estate market, Defendants already knew from the Lease's express terms that the dispute concerned well-over $5 million.  Therefore, the Court concludes that Defendants "discovered" the amount in controversy triggered the Business Court's jurisdiction, at the latest, on December 15, 2025—TCC's service date.

2.    The parties' pre-suit correspondence established jurisdictional facts.

¶ 13   DrinkPAK and Defendants' pre-suit demand letters put Defendants on notice that any potential litigation could fall under the Business Court's jurisdictional umbrella. As early as March 7, 2024, DrinkPAK sent PR III a Demand Letter seeking over $145 million in damages in connection with the Lease and TCC's allegedly fraudulent misrepresentations.  *See* Remand Mot. at Ex. A, 13.  On March 21, 2024, Defendants responded with a letter seeking "millions of dollars in unpaid amounts under the Lease." *Id.*; Ex. A, 13. Nearly a year later, on March 24, 2025, provided DrinkPAK with an accounting claiming $50,524,831 in damages. *Id.* at 6.  The parties' letter exchanges bely

PR III and TCC's contention that DrinkPAK's pleaded damages "did not provide an objective[] . . . amount in controversy" to satisfy the Business Court's jurisdictional threshold. Resp. at 2. Rather, the parties' correspondence reflect Defendants *knew* DrinkPAK sought damages nearly 30 times higher than the Business Court's jurisdictional threshold, even though it broadly pleaded relief "over $1,000,000." First Am. Pet. at 2. Moreover, Defendants themselves demanded damages from DrinkPAK nearly 10 times higher than the Business Court's jurisdictional floor. Therefore, the Court concludes the Defendants "discovered" the requisite amount in controversy when they learned they were defendants to the lawsuit on their respective service dates.

### B. Defendants' Unavailing Arguments

#### 1. PR III's counterclaim does not reset the removal clock.

¶ 14   Filing a counterclaim does not create a new action and does not trigger the statutory 30-day removal. The 30-day removal clock starts when Defendants are served or when Defendants discovered facts establishing the Business Court's jurisdiction over the action, whichever is later. TEX. GOV. CODE § 25A.006(f)(1)(A)-(B). "The common meaning of the term 'action' refers to an entire lawsuit or cause or proceeding, not to discrete 'claims' or 'causes of action' asserted within a suit, cause, or proceeding." *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 563-64 (Tex. 2014). The plain meaning of "claim" is "the assertion of an existing right; any right to payment or to an equitable remedy," and "the aggregate of operative facts giving rise to a right enforceable by a court." *Torch Energy Advisors Inc. v. Plains Expl. & Prod. Co.,* 409 S.W.3d 46, 56 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Thus, a "cause of action may exist before a suit is

instituted." *Magill v. Watson*, 409 S.W.3d 673, 679 (Tex. App.—Houston [1st Dist.] 2013, no pet.).  The Business Court's governing removal statute refers to the "action['s]" removal.  TEX. GOV. CODE § 25A.006(f)(1)(A)-(B).  The Business Court has established an action encompasses all claims and counterclaims.  *Sun Metals Grp., LLC v. Yu*, 2026 Tex. Bus. 1, ¶ 3 , 2026 WL 37435, at *1 (1st Div 2025) (citing *Yadav v. Agrawal*, 2025 Tex. Bus. 7, ¶ 41, 708 S.W.3d 246, 258 (3d Div. 2025)).

¶ 15    Defendants argue they timely filed their TBC Removal Notice on March 10, 2026, because their removal deadline began seven days earlier, on March 3, 2026, when PR III filed its counterclaim and lifted the amount in controversy above $5 million.  Resp. at 5.  They contend the cause of action, for the Business Court's jurisdictional purposes, did not commence when DrinkPAK filed its Original Petition on November 26, 2025.  *Id.* at 3.  Instead, they claim DrinkPAK's broad amount in controversy was insufficient to trigger the Business Court's jurisdiction until they filed their counterclaim.  *Id.* at 3.  Said differently, Defendants argue that, until Defendants' counterclaim, no cause of action existed in which to trigger the statutory 30-day removal window.  *Id.* at 3, 5.

¶ 16    Defendants' argument is flawed. Section 25A.006 (f) is available only when an *action* exists.  *See* TEX. GOV. CODE § 25A.006 (f)(1)(B).  Defendants' assertion wrongly conflates "claim" with "cause of action."  Permitting a counter-plaintiff to utilize its own counterclaim to negate an action's already-established jurisdiction would open a jurisdictional exit-door to every counter-plaintiff.  Nothing could prevent counter-plaintiffs from pleading jurisdictional facts to forum-shop, stall litigation, etc.  This end is unsupported by both statute and case law, and undoubtedly not aligned with the

Legislature's intent. *Tex. Dept. of Protective and Regul. Serv. v. Mega Child Care,* 145 S.W.3d 170, 176 (Tex. 2004) (when construing a statute, the court's primary objective is to ascertain and give effect to the Legislature's intent). Defendants' counterclaim filing did not create a new "action" that resets all statutory clocks and guidelines; Defendants filed their "claim," adding it to the already pending "action." *See In Re T. Bently Durant,* 720 S.W.3d 438, 442 (Tex. App.—15th Dist. 2025) (stating an "action" refers to the entire lawsuit).

¶ 17    The action's jurisdictional facts were readily apparent on November 26, 2025, the date DrinkPAK filed its Original Petition in Denton County. Accordingly, the Court concludes the Defendants discovered the jurisdictional facts no later than their service dates. Defendants filed their TBC Removal Notice on March 10, 2026, far beyond the 30-day statutory mandate.

### 2. Texas Rule of Evidence 408 does not bar the Court from considering pre-suit correspondence to determine jurisdiction.

¶ 18    Texas Rule of Evidence 408 does not preclude the Court from considering pre-suit demand letters to determine when Defendants discovered the Business Court's jurisdiction. Rule 408 concerns compromise offers and negotiations. TEX. R. EVID. 408. Under the Rule, the following are inadmissible to prove or disprove a claim's validity:

> (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or statements made during compromise negotiations about the claim.

Tex. R. Evid. 408 (a)(1)-(2). However, a court may admit compromise offers and negotiations "for another purpose, such as proving a party's or witness's bias, prejudice, or interest, [or] negating a contention of undue delay." Tex. R. Evid. 408(b).

¶ 19    In Texas, offers of settlement are not admissible to prove a claim's liability, invalidity, or amount at trial. *Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 649 (Tex. 1995) (orig. proceeding); *Tatum v. Progressive Polymers, Inc.*, 881 S.W.2d 835, 837 (Tex. App.—Tyler 1994, no writ). However, Rule 408 does not bar the admission of settlement offers when offered for another relevant purpose. Tex. R. Evid. 408(b); *Barrett v. U.S. Brass Corp.*, 864 S.W.2d 606, 633 (Tex. App.—Houston [1st Dist.] 1993), *rev'd on other grounds sub nom. Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644 (Tex. 1996); *Portland Sav. & Loan Ass'n v. Bernstein*, 716 S.W.2d 532, 537 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) (settlement negotiations admitted to show alleged misrepresentative statements, not admitted to prove the claim liability). Thus, an offer or demand for settlement may be admissible for another purpose, such as to demonstrate bias or prejudice. *Gen. Motors Corp. v. Saenz*, 829 S.W.2d 230, 243 (Tex. App.—Corpus Christi 1991), *rev'd on other grounds*, 873 S.W.2d 353 (Tex. 1993); *St. Paul Reinsurance Co. v. Greenberg*, 134 F.2d 1250, 1254-55 (5th Cir. 1998) (admitting pre-suit letters to establish federal amount in controversy). Whether evidence is impermissibly offered to prove liability or offered for another valid reason is a matter within the court's discretion and requires the court to conduct a balancing test to determine whether the proffered evidence is admissible. *Tatum*, 881 S.W.2d at 837; *John Deere Co. v. May,* 773 S.W.2d 369, 373 (Tex. App.—Waco 1989, writ denied).

¶ 20    Defendants argue the parties' pre-suit demand letters are inadmissible correspondence under Rule 408, claiming the Rule prohibits the letters from being admitted to *prove* the amount in controversy. *See* Resp. at 2-3; 8 (emphasis added). Indeed, as stated above, Rule 408 elicits parameters around proving or disproving claim amounts. But Rule 408 is a trial vehicle, and the matter before the Court is one of jurisdiction. *See Allstate Ins. Co. v. Evins*, 894 S.W.2d 847, 850 (Tex. App.—Corpus Christi 1995, orig. proceeding) (discussing jury's ability to follow Rule 408 limiting instruction). Even so, DrinkPAK's offering aligns with the Legislature's intent behind Rule 408's "[]other purposes" provision, as pre-suit communications are jurisdictional in nature. TEX. R. EVID. 408 (b); *Mega Child Care,* 145 at 176. As stated, the statute's "other purposes" provision permits settlement offers to determine a witness' bias, prejudice, or interest—the provision allows settlement offers to reveal a person/party's mindset. TEX. R. EVID. 408(b).

¶ 21    The provision supports the Court's pre-suit correspondence examination to determine when PR III and TCC discovered the lawsuit's amount in controversy. *See id.* DrinkPAK does not offer the demand letters to establish the monetary amount they are entitled to recover from Defendants; it offers the pre-suit correspondence to show Defendants' knowledge as relevant to the statutory removal timeline. The demand letters illustrate PR III and TCC have long-known the amount in controversy soared above the Business Court's threshold. Defendants' argument fails, as the pre-suit correspondence is not offered to establish the parties are entitled to certain damages. The Court is accordingly permitted to consider the pre-suit correspondence for jurisdictional purposes.

## IV.  CONCLUSION

¶ 22   Under the Business Court's statute governing removal, Defendants' TBC Removal Notice was untimely filed.  *See* TEX. GOV. CODE § 25A.006(f)(1)(A)-(B).  Based on the foregoing, the Court entered its TBC Remand Order granting DrinkPAK's Remand Motion.

_____
Judge, Texas Business Court,
Eighth Division

SIGNED: May 14, 2026.